**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Thomas FISHER, Defendant–
Appellant.**

**No. 01–5033.**

United States Court of Appeals,
Tenth Circuit.

April 10, 2002.

Before EBEL, McWILLIAMS, and HENRY, Circuit Judges.

ORDER AND JUDGMENT *

HENRY, Circuit Judge.

The defendant John Thomas Fisher was convicted after a jury trial of the following offenses: (1) possession of firearms and ammunition after former conviction of a felony (a violation of 18 U.S.C. § 922(g)(1)); (2) possession of a firearm during and in relation to a drug trafficking crime (a violation of 18 U.S.C. § 924(c)(1)); (3) possession of methamphetamine with intent to distribute (a violation of 21 U.S.C. § 841(a)(1)); (4) possession of LSD, a controlled dangerous substance (a violation of 21 U.S.C. § 844(a)); and (5) possession of marijuana (a violation of 844(a)). Pursuant to 21 U.S.C. § 851(a)(1), the government sought an enhancement of Mr. Fisher's sentence because of a prior felony conviction. For the reasons set forth below, we affirm his convictions and sentences.

*I. BACKGROUND*

On June 24, 2000, Tulsa Police Officer M.E. Parsons requested a search warrant from a Tulsa County District Court judge for a residence on West 37th Street in Tulsa, Oklahoma. In the affidavit in support of the warrant, Officer Parsons stated that, on May 26, 1999, he had received information from a confidential informant "that a subject known ... as John Thomas

* This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Fisher aka Turtle was living [in the residence and] was selling drugs." Rec. vol. I, doc. 15, Ex. B, at 2 (Br. in Support of Mtn. to Suppress, filed Aug. 23, 2000).

Officer Parsons also described his efforts to verify this information. Police officers observed a van outside the 37th Street residence that matched the description of Mr. Fisher's van provided by the informant. Additionally, on two occasions, items discovered in trash abandoned outside the residence tested positive for methamphetamine. Relying on Officer Parson's affidavit, a Tulsa County district judge issued a search warrant for the 37th Street residence.

On June 29, 1999, Tulsa police officers executed the warrant. Mr. Fisher answered the door, and the officers detained him and moved him to the front yard. In the living room, they observed two men and two women, none of whom appeared to live at the house. On the floor of the living room, the officers found a bag containing methamphetamine.

The officers then conducted a pat down search of all the individuals who were in the house, including Mr. Fisher. Items discovered in the pockets of Mr. Fisher's overalls included a loaded .25 caliber semiautomatic pistol, seven $100 bills, a $5 bill, and a pager.

A search of the 37th Street house revealed a number of other items associated with drug trafficking. In the back bedroom, police officers found three loaded weapons: a .223 caliber bolt rifle, a 20 gauge shotgun, and a .22 caliber bolt action rifle. A safe in a closet in the back bedroom contained the following items: (1) a gun case with a .22 caliber semi-automatic assault pistol; (2) a cigar box containing bags holding methamphetamine and scales; (3) an organic chemistry book; and (4) a key holder containing LSD. In another bedroom, the officer discovered some loose marijuana, marijuana joints, a small brass smoking pipe, rolling papers, and a small plastic bag containing white powder.

Several items suggested that Mr. Fisher lived at the 37th Street residence. In the area near the desk and file cabinet in the back bedroom, officers discovered a box containing checks in the name of John T. Fisher and a Michigan identification card in the name of John Thomas Fisher. In the mailbox, the officers discovered a letter dated June 28, 1999 and addressed to John Fisher at the 37th Street address. The safe in the back bedroom contained an address book stating "[t]his book belongs to John Fisher." The closet in the back bedroom contained men's clothing.

After Mr. Fisher was indicted, he filed a motion to suppress, arguing that officers had insufficient information to corroborate the allegations of the confidential informant. The district court conducted a hearing and denied the motion. Ruling from the bench, the court reasoned that there was probable cause to believe that there was evidence of illegal activity at the 37th Street residence and that the officers had acted in good faith in executing the warrant.

At the conclusion of the government's case, Mr. Fisher filed a motion for a judgment of acquittal on the counts involving possession of methamphetamine and possession of a firearm. He argued that the government had failed to prove that he resided at the house on 37th Street and that, as a result, there was insufficient evidence that he had constructive possession of these items. The district court denied Mr. Fisher's motion, and the jury convicted him on all counts.

## *II. DISCUSSION*

In this appeal, Mr. Fisher first argues that the district court erred in denying his

motion to suppress the evidence discovered during the search of the 37th Street residence. He also contends that the evidence was insufficient to support his convictions for possession of methamphetamine and possession of a firearm during a drug trafficking crime. Finally, Mr. Fisher argues that the government violated Rule 5(a) of the Federal Rules of Criminal Procedure by failing to provide him with a hearing before a federal judicial officer until more than four months after he was arrested.

*A. Search of the 37th Street Residence*

Mr. Fisher contends that the district court erred in denying his motion to suppress the evidence found in the 37th Street residence. He focuses on Officer Parsons's affidavit, arguing that it failed to establish probable cause that evidence of illegal activity would be discovered. Mr. Fisher further argues that the good faith exception to the Fourth Amendment's warrant requirement is inapplicable. *See United States v. Leon,* 468 U.S. 897, 918–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (setting forth the good faith exception to the warrant requirement).

We review de novo the district court's rulings that probable cause existed and that the good faith exception to the warrant requirement applies. *United States v. Price,* 265 F.3d 1097, 1101 (10th Cir. 2001). However, in assessing the state court judge's issuance of the warrant, our inquiry is " 'deferential.' " *Id.* (quoting *United States v. Nolan,* 199 F.3d 1180, 1182 (10th Cir.1999)). We must "ensure that [the state court judge] had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." *Nolan,* 199 F.3d at 1182 (quotation marks omitted).

As the district court observed, even if a warrant has been issued without probable cause, evidence obtained during a search still should not be suppressed if the officers executing the warrant acted in good faith. *See Leon,* 468 U.S. at 913, 104 S.Ct. 3405; *Price,* 265 F.3d at 1102 (applying *Leon* and concluding that officers acted in good faith and that evidence should not be suppressed). "There is a presumption that when an officer acts upon a search warrant the officer is acting in good faith." *Id.* Nevertheless, good faith is lacking if "a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405.

The Supreme Court has identified four situations in which the good-faith exception to the warrant requirement is inapplicable: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) if the issuing judge "wholly abandoned his judicial role"; (3) if the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) if the warrant was so facially deficient that the executing officer could not reasonably believe it was valid. *Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405; *see also United States v. Tisdale,* 248 F.3d 964, 972 (10th Cir.2001) (discussing circumstances in which the good faith exception is inapplicable).

In order to resolve this appeal, we may immediately focus on the good faith exception. *See United States v. McKneely,* 6 F.3d 1447, 1453 (10th Cir.1993) (recognizing that a reviewing court may, in appropriate cases, turn directly to the good-faith issue without first considering the validity of the warrant under the Fourth Amendment). According to Mr. Fisher, that exception is inapplicable be-

cause "there was not one scintilla of evidence in [Officer Parsons's affidavit] as to the informant's reliability," Aplt's Br. at 12, and because "the warrant was so defective that the police officer could not have reasonably relied on it." *Id.* at 13. Mr. Fisher cites a series of decisions in which courts have deemed the good faith exception inapplicable and maintains that the facts in those cases are analogous to the circumstances here. *See id.* at 9–19 (discussing *United States v. Wilhelm,* 80 F.3d 116 (4th Cir.1996); *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996); *United States v. Jackson,* 818 F.2d 345 (5th Cir. 1987); and *United States v. Leake,* 998 F.2d 1359 (6th Cir.1993)).

We are not persuaded by Mr. Fisher's argument. As to the fact that Officer Parson's affidavit contained no statements as to the reliability of the informant, this circuit has stated that "there is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information." *See United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992). Here, the police obtained independent corroboration. On two occasions, they tested items of trash on the curb outside the residence, and the trash tested positive for drugs. Additionally, they discovered drug paraphernalia near the residence, and they observed short term vehicular traffic there. *Cf. United States v. Le,* 173 F.3d 1258, 1266 (10th Cir.1999) (concluding that an affiant's search of a suspect's trash and discovery of a used bag with white powder residue confirmed to be methamphetamine "reduced the chances of a reckless or prevaricating tale, [and] thus provid[ed] a substantial basis for crediting" the informants' assertions) (internal quotation marks omitted).

Moreover, the cases on which Mr. Fisher relies to challenge the application of the good faith exception are distinguishable. For example, in *Wilhelm,* the Fourth Circuit noted that the only corroboration of an informant's allegations was that the informant's directions to the defendant's house were correct. *See Wilhelm,* 80 F.3d at 120 (noting that "[a]lmost anyone can give directions to a particular house without knowing anything of substance about what goes on inside that house"). Similarly, in *Weaver,* the police officer "undertook no substantive independent investigative actions to corroborate his informant's claims." *Weaver,* 99 F.3d at 1379. The Sixth Circuit noted that "[h]ad the detective made some meaningful effort to corroborate the informant's report at issue, an entirely different case would have been presented." *Id.* at 1381 (internal quotation marks omitted). Finally, in the earlier Sixth Circuit case on which Mr. Fisher relies, the officer's attempted corroboration involved only two days of surveillance that revealed no suspicious activities. *See Leake,* 998 F.2d at 1365, 1367 (stating that "[t]he supporting affidavit was too vague[,]" that "[the officer's] limited two-night surveillance was insufficient to verify important elements of the anonymous caller's information[,]" and that "[a] review of the suppression hearing transcript reveals a police officer who himself was very unsure about the adequacy of investigation he performed in the wake of the anonymous tip"); *see also United States v. Jackson,* 818 F.2d 345, 350 (5th Cir.1987) (finding a "bare bones" affidavit containing no evidence of independent corroboration of informant's allegations insufficient to establish probable cause).

In his appellate brief and at oral argument, Mr. Fisher has argued that the Tulsa police officers' investigation of the informant's allegations was inadequate because the items of trash that tested positive for methamphetamine were found "abandoned at the curb on the south side of the resi-

dence." *See* Rec. vol. I, doc. 15, Ex B, at 2. Because it was found on the curb, Mr. Fisher maintains, the trash could have come from somewhere other than the 37th Street residence. He suggests that it was unreasonable for the Tulsa police officers to rely on a warrant based on such insufficient corroboration.

Mr. Fisher cites no decisions supporting his view of what constitutes sufficient corroboration, and we have found none. Given that probable cause denotes "a fair probability that contraband or other evidence of a crime" will be discovered in the place to be searched, *see United States v. Hager,* 969 F.2d 883, 886 (10th Cir.1992) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), *abrogated on other grounds by, Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and that the probable cause inquiry is a practical, commonsense one, based on the totality of the circumstances, *see Gates,* 462 U.S. at 238, 103 S.Ct. 2317, it was not unreasonable for the Tulsa police officers to rely on the testing of items of trash on the curb outside the suspected residence. *Cf. United States v. Danhauer,* 229 F.3d 1002, 1006, 1007 (10th Cir.2000) (concluding that the good faith exception applied even though "[t]he only police corroboration of the informant's information was the affiant's verification of the ... residence's physical description, a records check to confirm that [the defendant and his family] resided at the premises in question, an observation of [the defendant's wife] coming and going from the house to the garage, and a search of the ... criminal histories [of the defendant and his wife]" and reasoning that the detective "reasonably believed the fruits of his investigation into the informant's allegation sufficiently linked the manufacture of methamphetamine and [the defendant's] residence"). Thus, in searching the 37th Street residence, the officers acted in objectively reasonable, good faith reliance on the warrant. We therefore conclude that the district court did not err in denying Mr. Fisher's motion to suppress.

*B. Sufficiency of the Evidence Regarding Methamphetamine Charge*

Mr. Fisher argues that there was insufficient evidence that he possessed the methamphetamine found in the safe in the bedroom of his residence. As a result, he maintains, the district court erred in denying his motion for a judgment of acquittal as to count III of the indictment, which charged him with possession of methamphetamine with the intent to distribute, a violation of 21 U.S.C. § 841(a)(1).

"In reviewing ... a denial of a motion for judgment of acquittal, this court must review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Wood,* 207 F.3d 1222, 1228 (10th Cir.2000). "We must not weigh conflicting evidence or consider the credibility of the witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallo,* 238 F.3d 1242, 1247 (10th Cir.2001) (alterations and quotation marks omitted). "We will not uphold a conviction ... that was obtained by nothing more than piling inference upon inference, or where the evidence raises no more than a mere suspicion of guilt." *United States v. Rahseparian,* 231 F.3d 1257, 1262 (10th Cir.2000) (internal quotation marks and citations omitted).

In order to convict Mr. Fisher of possession of methamphetamine with the intent to distribute, the government was required to prove that: (1) Mr. Fisher knowingly

possessed methamphetamine; and (2) that he possessed methamphetamine with the specific intent to distribute it. *See Hager,* 969 F.2d at 888. Here, Mr. Fisher focuses on the first element, arguing that, even though methamphetamine was discovered in the 37th Street residence, the government failed to prove that he resided there.

In support of this argument, Mr. Fisher notes that the deed to the 37th Street residence was in someone else's name. He adds that the police officers never found a key to the safe in the closet of the back bedroom (which contained a .22 caliber assault weapon, bags holding methamphetamine and scales, an organic chemistry book, a key holder containing LSD, and an address book with Mr. Fisher's name on it). He also observes that the government offered no fingerprint evidence connecting Mr. Fisher to any of the bags of drugs and no evidence explaining how the address book with Mr. Fisher's name came to be stored in the safe.

The government responds that a rational trier of fact could conclude that Mr. Fisher had constructive possession of the methamphetamine in the 37th Street residence. In order to establish constructive possession, the government is required to prove that Mr. Fisher "knowingly ha[d] ownership, dominion or control over the narcotics and the premises where the narcotics are found." *Hager,* 969 F.2d at 888. While constructive possession may be demonstrated through circumstantial evidence, the government must show "a sufficient nexus between the defendant and the narcotics." *Id.* In a case in which there was no direct evidence that the defendant owned or rented a house, this circuit has concluded that a jury could properly find constructive possession of it from evidence that an individual was the only person living in the house at the time of the search. *See United States v. Wilson,* 107 F.3d 774, 779 (10th Cir.1997).

As the government notes, there is similar evidence here. The four people that the police officers discovered in the living room of the 37th Street residence resided elsewhere. The officers discovered mail addressed to Mr. Fisher at the 37th Street address as well as personal papers belonging to Mr. Fisher in the southwest bedroom. Mr. Fisher answered the door when the officers knocked, and the safe in the back bedroom closet contained an address book with Mr. Fisher's name on it. Affording the government the benefit of favorable inferences, this evidence is sufficient for a rational trier of fact to conclude that Mr. Fisher exercised dominion and control over the 37th street residence and that, as a result, he constructively possessed the methamphetamine that the police officers discovered there. *Cf. Wilson,* 107 F.3d at 778–79 (finding evidence of constructive possession sufficient to support a conviction). Accordingly, we conclude that the district court did not err in denying Mr. Fisher's motion for a judgment of acquittal on the § 841(a)(1) charge of possession of methamphetamine with intent to distribute.

### *C. Sufficiency of Evidence Regarding Possession of a Firearm in Relation to a Drug Trafficking Crime*

Mr. Fisher also challenges the sufficiency of the evidence supporting his conviction for possessing a firearm during and in relation to a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1). The firearm that the government alleged that Mr. Fisher possessed in violation of the statute is the .22 caliber semi-automatic pistol that police officers discovered in the safe in the closet of the back bedroom. *See* Rec. vol.

I, doc. 23, at 3 (second superseding indictment charging Mr. Fisher with possessing "an Intratrec Model TEC–22, .22 caliber semi-automatic assault weapon, ... as prohibited in [§ 924(c)(1)(B)(i) ] ... during and in relation to ... a drug trafficking crime").

Mr. Fisher's argument here is based on his challenge to the sufficiency of the evidence supporting the methamphetamine charge. He states that "[i]f the evidence is not sufficient to support the underlying conviction of the drug trafficking offense, then one of the essential elements for a conviction under 18 U.S.C. § 924(c)(1) is missing." *See* Aplt's Br. at 28.

Because Mr. Fisher's challenge to the methamphetamine charge is not supported by the record, his challenge to the § 924(c)(1) charge must also fail. We therefore conclude that the district court did not err in denying his motion for a judgment of acquittal on that ground.

*D. Alleged Violation of Fed.R.Crim.P. 5(a)*

Finally, Mr. Fisher argues that the government violated Fed.R.Crim.P. 5(a) by failing to bring him before a federal judicial officer during the period from March 20, 2000 until July 28, 2000. Mr. Fisher states that he was without counsel during this time and contends, in conclusory fashion, that he was prejudiced by the resulting delay in his trial. Because Mr. Fisher did not raise this argument in the district court, we review for plain error. *See United States v. Gomez,* 67 F.3d 1515, 1519 (10th Cir.1995) (reviewing for plain error a Speedy Trial Act claim not raised in the district court).

Rule 5(a) of the Federal Rules of Criminal Procedure provides, in part:

Initial Appearance Before the Magistrate Judge

(a) In General. Except as otherwise provided in this rule, an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant *shall take the arrested person without unnecessary delay before the nearest available federal magistrate judge or, if a federal magistrate judge is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.*

(emphasis added).

The parties agree that Mr. Fisher was not taken before a federal judicial officer from the time of the initial arrest in March until July 28, 2000. However, the government had provided a explanation of this delay.

In particular, the government reports that, prior to the issuance of the federal indictment in this case, Mr. Fisher had been arrested and charged with state court violations. He was released on bond on those charges. On March 20, 2000, state law enforcement officers contacted Mr. Fisher with regard to an unrelated assault charge. They then arrested him on the federal warrant arising out of the March 14, 2000 indictment in this case. In making the arrest, the state officers discovered drugs in Mr. Fisher's possession and decided to file new state charges against him. The state officers reported to the United States Marshal's Office that they had arrested Fisher and that new state charges had been filed. Federal officials then filed a federal detainer.

The government adds that, during the period from March until July, the United States Marshal's Office was repeatedly advised that Mr. Fisher was in state custody. On July 27, 2000, the state court issued a release. On the following day, Mr. Fisher was arrested on the federal warrant in this

case and brought before a magistrate for his initial appearance.

In light of the fact that Mr. Fisher was in state custody during the period from March 20 until July 27, we conclude that Mr. Fisher has failed to establish a violation of Fed.R.Crim.P. 5. Several decisions have held that, absent any evidence of collusion between federal and state authorities, the provisions of Rule 5 do not apply when a prisoner is in custody and under the control of local or state officers.[1] Here, Mr. Fisher has failed to identify any evidence indicating that the state charges on which he was detained during the period from March 20, 2000 until July 28, 2000 arose out of collusion between state and federal officers.

Moreover, as a general rule, "[w]hether jurisdiction and custody of a prisoner shall be retained or surrendered is a matter of comity and is to be determined by the sovereign having custody." *Hernandez v. United States Attorney Gen.*, 689 F.2d 915, 918 (10th Cir.1982) (internal quotation marks omitted). The record indicates that Mr. Fisher's initial detention after his arrest on March 20, 2000 involved such a matter of comity-the state exercised its discretion in holding Mr. Fisher in custody. Once Mr. Fisher was delivered to federal custody, he received a timely initial appearance, as required by Rule 5.

We therefore reject Mr. Fisher's challenge to his convictions based on an alleged violation of Fed.R.Crim.P. 5.

### III. CONCLUSION

We AFFIRM Mr. Fisher's convictions and sentences.

**Shirley N. HILL, Plaintiff–Appellant,**

**v.**

---

1. *See, e.g., United States v. Morris*, 445 F.2d 1233, 1236 (8th Cir.1971) (stating that "[t]he requirements of the foregoing rules [including Rule 5] ... are designed to frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual. But this salutary principle is not applicable where the person under arrest is in the custody and under the control of local and not federal officers, unless, of course, the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities"); *Little v. United States*, 417 F.2d 912, 914–15 (9th Cir.1969) (stating that "Rule 5(a) ... regulates the conduct of federal officers, not state officers[,]" that "[o]ther circuits have held that where a state arrest precedes a federal arrest, any delay in arraignment under Rule 5(a) runs from the time of the federal arrest, absent a showing of collusion with state officers[,]" but that "[o]ur circuit has taken the position that prior state custody may be taken into account in determining the reasonableness of delay that ensued *after* federal officers took custody of the defendant,") (emphasis added); *United States v. Rivas–Lopez*, 988 F.Supp. 1424, 1428 (D.Utah 1997) (stating that "Rule 5(a) attaches only after the accused is taken into federal custody[,]" that "defendant was in the custody of state police until the Indictment and warrants were issued[,]" that "[t]here was no showing by defendant that the state and federal officers were working together to circumvent Rule 5(a)[,]" and that, as a result, "there was no Rule 5(a) violation").