**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 99-3379

BRYAN E. TISDALE,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. CR-99-10016-01-WEB)**

Submitted on the briefs:

Michael G. Katz, Federal Public Defender, and Vicki Mandell-King, Assistant Federal Public Defender, Denver, Colorado, for Defendant - Appellant.

Jackie N. Williams, United States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney, Topeka, Kansas, for Plaintiff - Appellee.

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **MILLS**, District Judge.[*]

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

**MILLS**, District Judge.

_____

Plea of guilty to possession of cocaine with intent to distribute.

Sentence: 365 months, consecutive to state sentences.

Issues: denial of motion to suppress and sentence.

## I. BACKGROUND

At approximately 2:11 a.m., on July 25, 1998, Wichita police officers were dispatched to the scene of an attempted burglary/robbery at 1645 North Hydraulic, Wichita, Kansas. Upon arrival, Wichita police officer Donna-Jean Buckman observed Bryan E. Tisdale lying on the ground between the two residences located at 1645 North Hydraulic and 1651 North Hydraulic.[1] Tisdale's white 1992 Nissan Maxima was parked in the driveway between the two houses.

Tisdale had been shot in his back and in his leg. Officer Buckman asked Tisdale what had happened, and Tisdale responded that he had heard a noise outside of his house, and when he went to investigate, he was shot. When asked who had shot him, Tisdale pointed to Donnell Mike Harrell who was lying dead next to the Maxima.[2] Due to the number of shell casings scattered around the area, Officer Buckman asked Tisdale where

[1]Officer Buckman recognized Tisdale from prior police contacts.

[2]Harrell died from a gun shot wound to the head which had been inflicted by Tisdale. Tisdale was not criminally charged for shooting Harrell because the police determined that the shooting was in self-defense.

-2-

the other gun was. Because he was on probation for some state court convictions, Tisdale initially told her that he did not have a gun, but later, he informed Officer Buckman that he gave the gun which he had used to kill Harrell to his neighbor David Howard who resides at 1651 Hydraulic.[3]

Accordingly, Wichita police officer Paul Kimble questioned Howard about the gun which Tisdale had used to kill Harrell. Howard informed Officer Kimble that he had found Tisdale injured and lying in the yard and that a bag of cocaine and a gun were located approximately four feet from Tisdale. Howard stated that Tisdale asked him to hide the gun and the cocaine, and he obliged.

After the police had recovered the gun from inside Howard's house and due to the bullet holes in Tisdale's house, the officers made a protective sweep of Tisdale's residence in order to determine whether any other victims or persons were in the house. The police did not find anyone in Tisdale's house, nor did they find any contraband or any other evidence of a crime.[4]

Meanwhile, Officer Sarah Hamilton, who was also at the scene, interviewed Tisdale's live-in girlfriend, Laketha Lee. Lee told Officer Hamilton that she had been about two blocks away at a friend's house when the shooting occurred but that she had spoken with Tisdale on the telephone shortly before the shooting. Lee stated that Tisdale

---

[3]Tisdale also said that the gun belonged to his girlfriend, Laketha Lee.

[4]The officers did not search any drawers or other items in Tisdale's house and were only in the house for approximately 90 seconds.

-3-

told her that he had heard a noise outside and that, when he went to investigate, he had found the trunk of his car open.[5] Later, Detective Christopher Moore interviewed Lee at the police station. Lee also advised Detective Moore that Tisdale had told her that he had found the trunk of his car open. However, Lee never specifically stated to which of Tisdale's cars he was referring; Detective Moore merely assumed that Tisdale was referring to his Maxima.[6]

A few hours later that same day, the police sought and obtained a search warrant for Tisdale's residence and for his Nissan Maxima.[7] When the warrant was executed, the police recovered a large quantity of crack cocaine packaged in two-ounce, one-ounce, and quarter-ounce packages located in the trunk of Tisdale's Maxima. In addition, the police

---

[5]Lee could not definitively remember whether she told Officer Hamilton to which vehicle Tisdale had been referring when he said that the trunk of his car was open. In addition to his Maxima, Tisdale owned at least two other vehicles, one of which was a Buick Regal. These other two vehicles were on the south side of Tisdale's house and were covered with a tarp or some kind of cloth car cover. Lee also speculated to Officer Hamilton that someone may have wanted to burglarize Tisdale because he had some nice things, including some large speakers in his Maxima.

[6]However, Officer Bradley Harris interviewed Yvonne Smith at the scene of the shooting, and Smith told him that, prior to the shooting, she had overheard Tisdale telling his [Tisdale's] father that someone had been in the trunk of his Buick Regal, i.e., one of the cars covered by the tarp.

[7]The Wichita police obtained the search warrant from Judge Clark Owens of the District Court of Sedgwick County, Kansas. Sergeant Jeff Allen prepared the application and affidavit in support of the search warrant, with the assistance of Assistant District Attorney Randall Hiebert, after conferring with the various police officers who were at the scene of the shooting. Sergeant Allen's application included an assertion that, upon returning home, Tisdale "had found the trunk of his 1992 Nissan Maxima open."

discovered a quantity of crack cocaine in a box and in a whiskey container in Tisdale's

bedroom.  In all, the police found a total of 936.79 grams of crack cocaine, the majority

of which was located in Tisdale's Maxima.

On March 3, 1999, a federal grand jury indicted Tisdale.  Count I charged him

with knowingly and intentionally possessing with the intent to distribute cocaine base in

violation of 21 U.S.C. § 841(a)(1); Count II charged him with unlawfully carrying or

using a firearm during and in relation to a drug offense in violation of 18 U.S.C. §

924(c)(1); and Count III charged him with being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).  Tisdale filed two motions to suppress with the district

court which were each denied on September 7, 1999, after the district court conducted an

evidentiary hearing.[8]

On September 10, 1999, Tisdale entered into a plea agreement whereby he pleaded

guilty to Count I of the indictment, reserving the right to appeal the district court's denial

of his motions to suppress.  In exchange for his plea, the Government agreed to move to

dismiss Counts II and III of the indictment and to withdraw its 21 U.S.C. § 851(a) notice

of Tisdale's three prior felonies.  On November 18, 1999, the district court sentenced

---

[8]Tisdale's first motion sought to suppress certain statements which he argued
should have been excluded because the police did not advise him of his Miranda rights
prior to his making the statements.  Tisdale has not challenged the district court's denial
of this motion to suppress.  Rather, he challenges the district court's denial of his second
motion, arguing that Sergeant Allen's application failed to establish probable cause to
justify the issuance of the search warrant.

Tisdale to 365 months of imprisonment. Tisdale has now filed the instant appeal challenging the district court's denial of his suppression motion and the district court's calculation of his sentence under the United States Sentencing Guidelines.

**II. ANALYSIS**

A. <u>MOTION TO SUPPRESS</u>

Tisdale argues that Sergeant Allen's application and affidavit, which he submitted to Judge Owens in support of his request for a search warrant for Tisdale's Maxima and residence, failed to demonstrate probable cause for the issuance of the warrant because there was no basis to assume that he possessed other guns or drugs or that any other such items would be found in his house or car. Specifically, Tisdale asserts that there was no basis for the search warrant because he had told the police that nothing was missing from his vehicle, because the fact that he had possessed and used his girlfriend's gun does not lead to the logical conclusion that he kept other guns in his home, and that the discovery of a minuscule amount of cocaine (<u>i.e.</u>, an amount appropriate for personal consumption) does not logically lead to the conclusion that he maintained other quantities (<u>i.e.</u>, an amount appropriate for distribution) of cocaine in his car or house. Moreover, Tisdale claims that Judge Owens' determination of probable cause is undermined by the fact that the police officers conducted a protective search of his house but uncovered no drugs or firearms.

Furthermore, Tisdale argues that the district court erred in concluding that the

good faith exception applied to the Fourth Amendment's exclusionary rule. Tisdale contends that the good faith exception does not apply: (1) because the warrant is based upon an affidavit which is facially lacking any indicia of probable cause, (2) because Sergeant Allen recklessly included false information regarding which car was the object of Harrell's attempted theft (the application for the search warrant identified the Maxima, but Tisdale claims that the evidence establishes that Harrell was after his Buick Regal), and (3) because Sergeant Allen omitted the significant fact that the officers had previously performed a protective sweep of his house without discovering any drugs, weapons, or contraband. Tisdale also contends that the good faith exception should not apply because Officer Harris recklessly failed to communicate the information which he had received from Smith that Tisdale was referring to his Buick Regal's trunk as being opened, not his Maxima. In short, Tisdale argues that, when the application for the search warrant is stripped of all irrelevant information, the affidavit is merely "a bare bones" application which was insufficient to establish probable cause for issuing the search warrant. Accordingly, Tisdale asserts that the district court erred in denying his motion to suppress.

The Government argues that the search warrant was supported by probable cause. The Government asserts that the affidavit recited many of the factual events which occurred on the night of the shooting, including the fact that Harrell lay dead immediately next to the trunk of Tisdale's Maxima, the fact that shell casings were found near

Tisdale's house and Maxima, the fact that bullet holes were found in the exterior of Tisdale's house, the fact that Tisdale had exited his house with a gun in his hand, and the fact that Tisdale gave the gun and a bag of crack cocaine to his neighbor to hide. Based upon this and the other facts contained within Sergeant Allen's application, the Government claims that Judge Owens had a substantial basis for concluding that the application and affidavit established probable cause, i.e., a basis to believe that there was a fair probability that contraband or evidence of a crime would be found in Tisdale's house and/or Maxima, thereby justifying the issuance of the search warrant for both. Therefore, the Government claims that the district court did not err in denying Tisdale's motion to suppress.

Alternatively, the Government contends that the law enforcement officers' reliance upon Judge Owen's probable cause determination was objectively reasonable, and thus, the good faith exception applies. Moreover, the Government claims that, as discussed supra, Sergeant Allen's affidavit is not a "bare bones" application. Finally, the Government argues that it is clear that the Maxima was the subject of the robbery and that any failure by Officer Harris to communicate any information to the other officers was merely inadvertent. In short, the Government asserts that the application for the search warrant contained no intentional or reckless misstatements, nor did it contain any material omissions, and therefore, the district court did not err in denying Tisdale's motion to suppress.

1.	<u>Probable Cause</u>[9]

This Court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring "that the magistrate had a substantial basis for concluding that probable cause existed." <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983)(quotation omitted). Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id</u>. at 238; <u>United States v. McCarty</u>, 82 F.3d 943, 947 (10th Cir. 1996). "[T]he defendant bears the burden of 'proving a factual nexus' between the Fourth Amendment violation and the seizure of the evidence sought to be suppressed." <u>United States v. King</u>, 222 F.3d 1280, 1285-86 (10th Cir. 2000), quoting <u>United States v. Nava-Ramirez</u>, 210 F.3d 1128, 1131 (10th Cir. 2000). "We review <u>de novo</u> the district court's probable cause determination." <u>United States v. Nolan</u>, 199 F.3d 1180, 1182 (10th Cir. 1999).

---

[9]"This court has recognized that a reviewing court may, in appropriate cases, turn directly to the good-faith issue without first considering the validity of the warrant under the Fourth Amendment. When there are important Fourth Amendment questions at issue, however, and resolution of such questions is necessary to guide future action by law enforcement officers and magistrates, it is appropriate to first address the Fourth Amendment issues before turning to the good-faith issue. In addition, resolution of the Fourth Amendment issue is often necessary, as in this case, to determine whether the officers' reliance on the warrant was reasonable for purposes of the good-faith analysis." <u>United States v. Rowland</u>, 145 F.3d 1194, 1206 n. 8 (10th Cir. 1998)(internal citations and quotations omitted). Based on these considerations, we believe it to be appropriate for us to first address the underlying validity of the warrant before considering the good-faith exception.

This Court's review of the issuance of the search warrant, however, is more deferential. Id. As we have previously explained:

> When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.

United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999).

We believe that Judge Owens "had a substantial basis for finding that probable cause existed", United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998), and that the district court did not err in denying Tisdale's motion to suppress. Sergeant Allen's application for a search warrant detailed all of the relevant information known to the Wichita police officers regarding the shooting which had occurred at 1645 Hydraulic on July 25, 1998. Specifically, the application and affidavit informed Judge Owens that an attempted robbery/burglary had occurred in the vicinity of 1645 and 1651 Hydraulic and that, as a result, one man was dead and another was wounded. In addition, Judge Owens knew from the affidavit that, upon hearing a noise outside, Tisdale exited his residence with a gun in his pocket, that numerous shell casings were scattered near Tisdale's Maxima and house, that Tisdale had asked his neighbor to hide the gun and a bag of crack cocaine for him, that Harrell lay dead in Tisdale's front yard and next to Tisdale's

-10-

Maxima, that Tisdale's house had bullet holes in its exterior, and that, earlier in the evening, Tisdale had found the trunk of his Nissan Maxima open.

Based upon this information, as well as the other facts contained within the affidavit, we find that a fair probability existed that the Nissan Maxima and/or his house was the subject of the robbery/burglary and that either or both may have contained evidence of a crime or criminal activity. Gates, 462 U.S. at 238-39. In making his probable cause determination, Judge Owens was permitted to "'draw reasonable inferences from the material provided in the warrant application.'" Nolan, 199 F.3d at 1183, quoting United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998); see United States v. Shomo, 786 F.2d 981, 984 (10th Cir. 1986)(holding that the magistrate is "not required to rule out every other possible alternative."). Because the affidavit indicated that Tisdale had found the trunk of his Maxima opened before the shooting and because Harrell lay dead adjacent to the trunk of the Maxima, it was reasonable for Judge Owens to believe that a fair probability existed that Tisdale's Nissan Maxima may contain evidence of a crime,[10] and a nexus existed between the place to be searched and the items to be seized. See United States v. Gant, 759 F.2d 484, 488 (5th Cir. 1985)(holding that

[10]As the Government notes, Tisdale did not tell the police officers after the shooting that nothing was missing from his Maxima; rather, Lee told the police officers that Tisdale had told her that nothing was missing from his trunk when he discovered it opened. In any event, Tisdale's statements did not relieve the police officers of their duty to investigate the homicide and the burglary/robbery, especially in light of the fact that Tisdale initially lied to Officer Buckman regarding his possession of a firearm.

"the nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence."); see also United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir. 1985), quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)(holding that "[p]robable cause to believe certain items will be found in a specific location is a 'practical, nontechnical conception,' [citations omitted] that need not be based on direct, first-hand, or 'hard' evidence."). Likewise, because Tisdale had exited his house with a gun (and presumably a bag containing crack cocaine) and because the exterior of his house contained bullet holes, it was reasonable for Judge Owens to believe that a fair probability existed that Tisdale's residence may also contain evidence of a crime. See Shomo, 786 F.2d at 984 (holding that police officers had probable cause to search a residence for a gun when the resident was seen leaving the house with a gun).

As this Court has previously opined, in reviewing whether probable cause existed for issuing a search warrant, "[t]he test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." Nolan, 199 F.3d at 1186, quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality). The Court believes that this test has been satisfied in this case. Therefore, Judge Owens' finding that, based upon Sergeant Allen's application and affidavit, probable cause existed to issue the search warrant and the district court's denial of Tisdale's motion to suppress are affirmed.

2.     Good Faith Exception

Even assuming, arguendo, that Sergeant Allen's application was insufficient to establish probable cause to issue the search warrant, we agree with the district court that the evidence obtained pursuant to the warrant should not be suppressed because the Wichita police officers who executed the warrant acted in good faith and reasonably relied upon the warrant issued by Judge Owens.  In United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court held that the Fourth Amendment's exclusionary rule should not bar the use of evidence obtained by police officers acting in good faith and with reasonable reliance on a facially valid search warrant. Id. at 919-20.  "[W]hen reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are 'devoid of factual support, not merely whether the facts they contain are legally sufficient.'" United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993), quoting United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985).  "Our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n. 23.  "In making this determination, we consider 'all of the circumstances,'and assume the executing officers have 'a reasonable knowledge of what the law prohibits.'" Rowland, 145 F.3d at 1207, quoting Leon, 468 U.S. at 919 n. 20.  As we have recently explained:

> The Supreme Court recognizes four situations in which an officer would not
> have reasonable grounds for believing a warrant was properly issued. See

-13-

> Leon, 468 U.S. at 922-23, 104 S. Ct. 3405. In these situations, the good-faith exception to the exclusionary rule would not apply. See id. First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Id. at 923, 104 S. Ct. 3405. Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role." Id. Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quotation omitted). Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. See id.

United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000). "The applicability of the Leon good-faith exception is a question of law which this court reviews de novo." Rowland, 145 F.3d at 1206.

Tisdale does not assert that Judge Owens abandoned his judicial role in issuing the search warrant, nor does he contend that the search warrant is so facially deficient that the police officers could not reasonably believe it to be valid. Although Tisdale does assert that Sergeant Allen's affidavit in support of the warrant is such a bare bones affidavit that no reasonable judicial officer would have found probable cause to issue the warrant, we have rejected that argument supra. See Rowland, 145 F.3d at 1206 n. 8 (noting that the "resolution of the Fourth Amendment issue is often necessary, as in this case, to determine whether the officers' reliance on the warrant was reasonable for purposes of the good-faith analysis."); see also United States v. Bishop, 890 F.2d 212, 216 (10th Cir. 1989)(holding that a "resolution of whether there was probable cause supporting the warrant is not necessary to our decision . . . because . . . the agents' conduct clearly falls

-14-

within the 'good faith exception' to the exclusionary rule."); see also United States v. Cook, 854 F.2d 371, 372 (10th Cir. 1988)("Assuming but not holding that the affidavit fails to establish probable cause, we believe the district court erred in refusing to apply the good faith exception to the exclusionary rule as set forth in Leon.").

Thus, the only claim which needs our attention is Tisdale's argument that Sergeant Allen's affidavit contained a material omission which misled Judge Owens. Specifically, Tisdale contends that the statement attributed to Lee–that he "had found the trunk of his 1992 Nissan Maxima open"–was incorrect because it was his Buick Regal's trunk which he had found opened upon returning home, not his Maxima. Moreover, Tisdale asserts that Sergeant Allen recklessly included this statement in his affidavit based upon Detective Moore's assumption regarding to which car Lee had been referring during her interviews; Lee never specified whether it was his Maxima's or his Regal's trunk which Tisdale said he had found open. Finally, Tisdale argues that Sergeant Allen recklessly omitted Smith's statement to Officer Harris that, prior to the shooting, she had overheard Tisdale telling his [Tisdale's] father that someone had been in the trunk of his Regal and recklessly omitted the fact that the officers conducted a protective sweep of his house on the night of the shooting but discovered no contraband or evidence of a crime.

Tisdale is correct that it is a violation of the Fourth Amendment to "knowingly and intentionally, or with reckless disregard for the truth," include false statements in an affidavit filed in support of a search warrant. Franks v. Delaware, 438 U.S. 154, 155

(1978).  Moreover, "[t]he standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." United States v. McKissick, 204 F.3d 1282, 1297 (10th Cir. 2000).  The false statement or omission must, however, be "necessary to the finding of probable cause" in order for the fruits of the search to be suppressed. Franks, 438 U.S. at 155; see Stewart v. Donges, 915 F.2d 572, 583 n. 13 (10th Cir. 1990)(opining that "not every omission of relevant information will be regarded as 'material.'  The omitted information must be so probative as to negate probable cause.").  Thus, "a court may look behind a search warrant when the affiant intentionally or recklessly misleads the magistrate judge by making an affirmatively false statement or omits material information that would alter the magistrate judge's probable cause determination." United States v. Kennedy, 131 F.3d 1371, 1377 (10th Cir. 1997).  The defendant bears the burden to demonstrate the affidavit's falsity or reckless disregard for the truth by a preponderance of the evidence. Id.; United States v. Knapp, 1 F.3d 1026, 1028 (10th Cir. 1993); United States v. Sullivan, 919 F.2d 1403, 1424 (10th Cir. 1990).

In the instant case, we agree with the district court that Tisdale has failed to demonstrate that there was any deliberate falsity or reckless disregard for the truth as to any assertion in or omission from Sergeant Allen's affidavit in support of the application for the search warrant.  Given his interview with Lee, the fact that Harrell was found dead near the trunk of Tisdale's Nissan Maxima, and the fact that Tisdale's Buick Regal was

-16-

covered with a tarp at the time of the shooting, it was reasonable for Detective Moore to assume that the Maxima was a target of the robbery and that Tisdale was referring to the Maxima when he informed Lee that he had found the trunk of his car opened. Therefore, it was reasonable for Detective Moore to relay this information to Sergeant Allen for inclusion in Sergeant Allen's affidavit in support of the search warrant, and the district court did not err in finding that the good faith exception to the exclusionary doctrine applied.

As for Tisdale's arguments based upon the omissions of certain facts from Sergeant Allen's affidavits (i.e., Smith's statements to Officer Harris and the fact the police officers had previously conducted a protective sweep of his home without discovering any evidence of a crime), Tisdale has failed to demonstrate that these "omissions" were anything more than inadvertent. Accordingly, we affirm the district court's finding that Tisdale's motion to suppress should be denied because Leon's good faith exception applies.

B.  SENTENCE

In addition to challenging his conviction, Tisdale also challenges the sentence imposed by the district court. Specifically, Tisdale argues that the district court erred in imposing his federal sentence to run consecutive to his state sentence and argues that the district court erred in calculating his criminal history score and category.

1.      Concurrent vs. Consecutive Sentence

As a result of the shooting incident on July 25, 1998, Tisdale's probation was revoked in three separate state court cases. Based upon these revocations, Tisdale was sentenced to 72 months of imprisonment. Tisdale was serving this 72 month sentence at the time of his federal sentencing hearing. Based upon his conditional plea of guilty in the instant case, the district court sentenced Tisdale to 365 months of imprisonment to be served consecutive to his 72 month state court sentence.

Tisdale argues that the district court erred as a matter of law in failing to impose his sentence in the instant case to run concurrently with his state court sentence. Tisdale asserts that U.S.S.G. § 5G1.3(b) applies in this case because, not only did the district court increase his criminal history score based upon the state probation revocation sentence, it also adjusted his offense level by adding two points based upon his possession of a firearm in relation to the offense conduct. U.S.S.G. § 5G1.3(b) requires district courts to impose concurrent sentences in cases in which U.S.S.G. § 5G1.3(a) does not apply, and therefore, Tisdale claims that the district court erred as a matter of law in imposing his federal sentence to run consecutive to his state sentence.

Alternatively, Tisdale contends that the district court abused its discretion in failing to order that his sentence in the instant case be served concurrent with his state court sentence based upon U.S.S.G. § 5G1.3(c). Tisdale argues that, when a defendant has had his probation, parole, or supervised release revoked (as he did) as the result of

committing the offense for which he is being sentenced, application note 6 to U.S.S.G. § 5G1.3 confers upon district courts the authority to order that the defendant's sentence on the offense of conviction be served concurrent with the sentence imposed for the violation of his probation, parole, or supervised release. Tisdale asserts that the district court erred in his case in believing that it lacked the discretion to impose a concurrent sentence as is evidenced by the district court's comments at his sentencing hearing. Accordingly, Tisdale asks the Court to remand this case to the district court with instructions to order that his 365 month sentence be served concurrent with his 72 month state court sentence pursuant to U.S.S.G. § 5G1.3(b) or with instructions for the district court to exercise its discretion to impose a concurrent sentence pursuant to U.S.S.G. § 5G1.3(c).

The Government argues that U.S.S.G. § 5G1.3(b) is inapplicable because that section requires the imposition of a concurrent sentence only if the offense level calculated in the case takes into account the offense underlying the undischarged offense. The Government asserts that Tisdale received a two point enhancement based upon his possession of a firearm in this case, not in his prior state cases. Thus, the Government claims that U.S.S.G. § 5G1.3(b) does not apply because Tisdale's state court offenses were not fully taken into account in the determination of his offense level for the instant federal offense.

Furthermore, the Government argues that, even if this Court were to follow the other circuit courts which have held that application note 6's language "should be

imposed" is permissive rather than mandatory, the district court's statements, when viewed in context and in its entirety, establish that the district court believed that it had the discretion to order that Tisdale's federal sentence be served concurrent with his state court sentence, but it chose not to do so. In any event, the Government contends that the imposition of a consecutive sentence in this case does not constitute plain error. Accordingly, the Government asks the Court to affirm the district court's imposing Tisdale's sentence in this case to run consecutive to his state court sentence.

Before turning to the merits of Tisdale's argument, we must first decide the applicable standard of review. Generally, this Court reviews de novo the district court's interpretation and application of the sentencing guidelines. United States v. Contreras, 210 F.3d 1151, 1152 (10th Cir. 2000); United States v. Chavez-Valenzuela, 170 F.3d 1038, 1039 (10th Cir. 1999). However, if a party fails to lodge a specific objection with the district court to its interpretation or application of the sentencing guidelines, such a failure precludes appellate review. United States v. Gilkey, 118 F.3d 702, 704 (10th Cir. 1997).

Nevertheless, "'we recognize a narrow exception and review a legal question involving application of the sentencing guidelines for plain error.'" Id., quoting United States v. Ciapponi, 77 F.3d 1247, 1252 (10th Cir. 1996). "In order to evoke this exception, 'the error must be particularly egregious, as well as obvious and substantial,' and we will apply it 'solely in those circumstances in which a miscarriage of justice

would otherwise result.'" United States v. Ivy, 83 F.3d 1266, 1295 (10th Cir. 1996), quoting United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir. 1991), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993); Johnson v. United States, 520 U.S. 461, 465-67 (1997); United States v. Olano, 507 U.S. 725, 732 (1993).

Although Tisdale's objection to the district court's imposition of a sentence consecutive to that imposed by the state court is not the model of specificity, we find that his counsel sufficiently raised the issue of the imposition of a consecutive versus a concurrent sentence with the district court, and therefore, his claim is preserved for appeal. At the sentencing hearing, the district court set forth what Tisdale's sentence was going to be and then asked whether there were any objections to the proposed sentence. Tisdale's counsel responded: "The only request, Your Honor, would be that the Court consider the lower end of the guidelines. And also, he is serving a State sentence, but that the Court make the sentence here concurrent with the State sentence." The district court heard brief arguments from both parties on this issue and then ordered Tisdale's sentence to be served consecutive to his state court sentence.

While it would have been preferable for Tisdale to have referenced U.S.S.G. § 5G1.3 in making his request to the district court that it order his sentence to be served concurrent with his state court sentence, he did alert the district court to the issue at hand. See United States v. Reyes-Lugo, 238 F.3d 305, 307-08 (5th Cir. 2001)(reviewing the defendant's claim de novo where, although he did not object to the imposition of a

-21-

consecutive sentence, he did ask the district court to impose a concurrent sentence);

see also United States v. Hernandez, 64 F.3d 179, 181 (5th Cir. 1995)(opining that,

although the defendant failed to cite U.S.S.G. § 5G1.3(c), his request for a concurrent

sentence alerted the district court to the issue before it).  Accordingly, we will review the

district court's imposition of a consecutive sentence de novo.

> As we have recently explained:
>
> In general, a district court has broad discretion to sentence a defendant to a consecutive or concurrent sentence.  This discretion is limited, however, by U.S.S.G. § 5G1.3 when the district court seeks to impose a consecutive or concurrent sentence upon a defendant subject to an undischarged term of imprisonment.  Section 5G1.3(a) requires a consecutive sentence when the defendant committed the instant offense while serving a term of imprisonment, or before the defendant began serving a term.  Section 5G1.3(b) applies when subsection (a) does not, and requires a concurrent sentence if the "undischarged term of imprisonment resulted from offense(s) that have been fully taken into account" in the determination of the instant offense level.  Section 5G1.3(c) applies in any other case and authorizes the district court to impose a sentence to run concurrently, partially concurrently, or consecutively to the undischarged sentence "to achieve a reasonable punishment."

Contreras, 210 F.3d at 1152 (internal citations and footnote omitted).  Subsection (a) does

not apply in this case because an undischarged term of probation is not an "undischarged

term of imprisonment" as that phrase is used in U.S.S.G. § 5G1.3. United States v.

Cofske, 157 F.3d 1, 1-2 (1998); Prewitt v. United States,83 F.3d 812, 817-18  (7th Cir.

1996).  Moreover, subsection (b) does not apply because the district court did not fully

take into account Tisdale's prior state court offenses. Contreras, 210 F.3d at 1153; United

States v. McCarty, 82 F.3d 943, 951 (10th Cir. 1996); United States v. Johnson, 40 F.3d

-22-

1079, 1082 (10th Cir. 1994).  As the Government notes, the district court increased

Tisdale's base offense level by two levels because he possessed a firearm in the instant

offense (i.e., his federal drug conviction), not because he possessed a gun in any of his

prior state court cases.  Therefore, U.S.S.G. § 5G1.3(c), which grants the district court the

discretion to impose a concurrent sentence, a consecutive sentence, or a combination

thereof, applies.

> Application note 6 to U.S.S.G. § 5G1.3 provides in relevant part:
>
> If the defendant was on federal or state probation, parole, or supervised
> release at the time of the instant offense, and has had such probation,
> parole, or supervised release revoked, the sentence for the instant offense
> should be imposed to run consecutively to the term imposed for the
> violation of probation, parole, or supervised release in order to provide an
> incremental penalty for the violation of probation, parole, or supervised
> release.

Id.  Although we have previously noted the current split among the circuit courts

regarding whether note 6's language is mandatory or permissive, e.g., United States v.

Carver, 160 F.3d 1266, 1268 n. 1 (10th Cir. 1998), we have not yet weighed in on the

issue. Compare United States v. Alexander, 100 F.3d 24, 26-27 (5th Cir. 1996)(holding

that note 6's language is mandatory), and United States v. McCarthy, 77 F.3d 522, 539-

40 (1st Cir. 1996)(same), and United States v. Bernard, 48 F.3d 427, 430-32 (9th Cir.

1995)(same), and United States v. Goldman, 228 F.3d 942, 944 (8th Cir. 2000)(same),

with United States v. Maria, 186 F.3d 65, 70-73 (2d Cir. 1999)(holding that note 6 is not

mandatory based upon use of the word "should" rather than the word "shall"), and United

-23-

States v. Walker, 98 F.3d 944, 945 (7th Cir. 1996)(indicating, in dicta, that note 6 creates a "strong presumption in favor of consecutive sentencing."). The issue is now squarely before us because the state court revoked Tisdale's sentences of probation and sentenced him on those revocations prior to the district court sentencing him.

We side with the minority of the circuit courts which have held that note 6's language is permissive. Paramount to this conclusion is the Supreme Court's directive that courts are to give words their ordinary meaning when they do not have a specific definition or an established common-law meaning. Chapman v. United States, 500 U.S. 453, 461-62 (1991); United States v. Floyd, 81 F.3d 1517, 1523 (10th Cir. 1996). "Should" is "used in auxiliary function to express duty, obligation, necessity, propriety, or expediency." WEBSTER'S THIRD NEW INT'L DICTIONARY 2104 (1st ed. 1993); see BLACK'S LAW DICTIONARY 1379 (6th ed. 1990)(defining "should" as "ordinarily implying duty or obligation; although usually no more than an obligation of propriety or expediency . . . ."). The phrase "should be" is defined as something "that ought to be." WEBSTER'S THIRD NEW INT'L DICTIONARY 2104 (1st ed. 1993). Conversely, "shall" is "used to express a command or exhortation," and is "used in laws, regulations, or directives to express what is mandatory." WEBSTER'S THIRD NEW INT'L DICTIONARY 2085 (1st ed. 1993); see BLACK'S LAW DICTIONARY 1379 (7th ed. 1999)(defining "shall" as "[h]as a duty to ; more broadly is required to."). Thus, when used within the context of a Sentencing Guideline provision, "should" does not mean "shall." Maria, 186 F.3d at 70;

-24-

see United States v. Checora, 175 F.3d 782, 790 (10th Cir. 1999)(noting that "[i]f a word in the Sentencing Guidelines is not specifically defined and does not have an established common-law meaning, the word must be given its ordinary meaning.").

Furthermore, as the background commentary to U.S.S.G. § 5G1.3 points out, when a defendant is subject to an undischarged sentence of imprisonment, the sentencing court generally has the authority under 18 U.S.C. § 3584(a) to impose a sentence to run either concurrently with or consecutive to the prior undischarged term, predicated on the sentencing court's consideration of the factors listed in 18 U.S.C. § 3553(a). U.S.S.G. § 5G1.3, comment. (backg'd).  The governing statutes thus vest discretion in the sentencing court and provide criteria for the exercise of that discretion.

Section 5G1.3 itself is divided into three sections, one of which establishes circumstances in which a court "shall" impose a consecutive sentence (U.S.S.G. § 5G1.3(a)), and one of which sets out circumstances in which a court "shall" impose a concurrent sentence. U.S.S.G. § 5G1.3(b).  Section 5G1.3(c), the section with which we are concerned, differs from the first two sections in two significant respects.  First, it is a policy statement and not a guideline provision.  Moreover, it is not even a policy statement which interprets a guideline provision, and therefore, it is advisory rather than mandatory in nature. United States v. Hurst, 78 F.3d 482, 483-84 (10th Cir. 1996). Second, § 5G1.3(c) imposes no duty on the sentencing court but merely provides that, in any case not covered by the other two sections, the sentence "may be imposed to run

-25-

concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Id. The use of the permissive word "may" and the reference to the need to achieve a reasonable punishment clearly contemplate an individualized examination of particular factors and an exercise of sentencing discretion by the sentencing court in assessing those factors.

In addition, application note 6 provides that, under the circumstances present here, the sentences "should be imposed to run consecutively . . . in order to provide an incremental penalty for the violation of probation, parole, or supervised release." U.S.S.G. § 5G1.3, comment. (n. 6)(emphasis added). The note then refers to U.S.S.G. § 7B1.3 and describes that section as "setting forth a policy that any imprisonment penalty imposed for violating probation or supervised release should be consecutive to any sentence of imprisonment being served or subsequently imposed." Id. (emphasis added). Section 7B1.3 is also a policy statement and not a guideline provision and is, therefore, only advisory. In apparent recognition of that fact, note 4 to § 7B1.3 provides that "it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation." U.S.S.G. § 7B1.3, comment. (n.4)(emphasis added).

We are particularly persuaded by the Second Circuit's opinion in United States v. Maria, 186 F.3d 65 (2d Cir. 1999). In our opinion, the Second Circuit in Maria

persuasively refuted the majority of the circuit courts' position that § 5G1.3 and application note 6 mandate the imposition of consecutive sentences.

In concluding that application note 6's language is mandatory, the majority of the circuit courts have based their holding upon the fact that neither U.S.S.G. § 5G1.3 nor application note 6 provide any qualifications or reservations. However, as Maria notes, "the Sentencing Commission's use of 'should' instead of 'shall' strongly suggests the existence of the very qualification that the First and Fifth Circuits found not to exist. The Commission knows how to draft a mandatory provision when it intends to." Maria, 186 F.3d at 73. Moreover the majority of the circuit courts find significant the fact that the situations covered by note 6 are analytically similar to those governed by § 5G1.3(a) which mandates consecutive sentences. The Commission, nonetheless, did not include the note 6 situations in the ambit of § 5G1.3(a), and the factual distinctions between that section and note 6 indicate that the Commission did not include them for a reason. Id. No court which has adopted the majority position has explained "why, if the Sentencing Commission had indeed intended to require a consecutive sentence in situations envisioned by Note 6, it did not either amend subsection (a) to include federal offenses in violation of parole, probation or work release, or reword Note 6 to require unambiguously a consecutive sentence." Id. Finally, as for the other circuit courts' reliance upon U.S.S.G. § 7B1.3(f), as discussed supra, note 4 to that section states only that the Commission recommends running the sentence consecutively in apparent recognition that

the Commission has chosen to couch that entire section as an advisory policy statement rather than as a mandatory guideline.

Thus, based upon the plain language of U.S.S.G. § 5G1.3(c) and application note 6 and because nothing in the language of the applicable statutes, the guideline provisions, the application notes, or the provisions to which the notes refer indicate that the sentencing court is without discretion to determine whether a sentence under the circumstances before us in this case should run concurrently or partially concurrently with a prior undischarged term of imprisonment, we conclude that sentencing courts possess the discretion to determine, under U.S.S.G. § 5G1.3(c) and application note 6, whether to impose a sentence concurrent with, partially concurrent with, or consecutive to a prior undischarged term of imprisonment.

Based upon this conclusion, we must remand for re-sentencing in this case. Contrary to the Government's argument, we do not believe that the district court believed that it could impose Tisdale's federal sentence to run concurrent with or partially concurrent with his state sentence but that the district court simply exercised its discretion not to do so. The district court's comments during Tisdale's sentencing hearing leaves little doubt that the district court believed that it was required to impose Tisdale's federal sentence to run consecutive to his state sentence:

> Mr. Tousley:    The only request, Your Honor, would be that the Court consider the lower end of the guidelines.  And also, he is serving a State sentence, but that the Court make the sentence here concurrent with the State sentence.

| | |
|---|---|
| The Court: | What does the Government have to say about it? |

* * *

| | |
|---|---|
| Ms. Furst: | And Judge Bribiesca in State Court imposed, I think, consecutive State sentences if they hadn't already been, but the total was 72 months, if I recall correctly. I oppose this one running concurrent. I think they need to be consecutive to his State Court convictions. |
| Mr. Tousley: | Just for the Court's information, the probation in the other cases was revoked as a result of this same indictment. |
| The Court: | He's known that under the plea agreement, he's known that the Government was going to oppose anything but the maximum. I don't know how to do it, we'll let the State take care of it. We'll – this – this sentence cannot be served with the State sentence. We'll let the State decide what they want to do about that. This sentence will be consecutive to the State sentence, whatever that is. |

Although it is true that during Tisdale's change of plea hearing, the district court advised Tisdale that his sentence "could" be imposed consecutive to his state sentence, we do not believe that this comment by the district court reveals an understanding on its part that it could impose a sentence concurrent with Tisdale's state sentence–especially given the district court's unequivocal comment during Tisdale's sentencing hearing that "this sentence <u>cannot</u> be served with the State sentence." Accordingly, we must vacate this portion of Tisdale's sentence and remand this matter to the district court for re-sentencing. On remand, the district court must decide whether Tisdale's sentence in this case should run consecutive to, concurrent with, or partially concurrent with his State sentence.

-29-

2.    Criminal History Points

Finally, Tisdale argues that the district court incorrectly calculated his criminal history score and, in turn, his criminal history category.[11]  First, Tisdale asserts that the district court committed plain error in adding additional criminal history points to each of his three prior state court convictions in which his probation was revoked as a result of the instant offense.  Tisdale contends that, pursuant to U.S.S.G. § 4A1.1, § 4A1.2, and application note 11 to § 4A1.2, the revocation of his sentences of probation in his three state court cases should count as a single probation violation.  Specifically, Tisdale claims that instead of receiving three criminal history points for his 2/21/96 conviction, two points for his 4/18/96 conviction, and three points for his 11/19/96 conviction, he should only receive one point per conviction with two additional points being added for the sentence imposed for the revocations of his sentences of probation.

Second, Tisdale argues that the district court engaged in impermissible double counting in that the district court assessed criminal points to him pursuant to both U.S.S.G. § 4A1.1(a) and (d).  Tisdale contends that, because he received criminal history points under both subsections (a) and (d), he is being punished twice for the fact that, in committing the instant federal drug offense, he violated the terms of his state court sentences of probation which were revoked and for which he has received a term of

_____

[11]The district court assessed Tisdale 14 criminal history points, placing him in a criminal history category VI.

imprisonment. In other words, Tisdale asserts that he is being doubly punished for the same conduct, i.e., he received three criminal history points pursuant to U.S.S.G. § 4A1.1(a) for his three prior state court convictions and two points under subsection (d) for his prior state court convictions based upon the same conduct. Because subsections (a) and (d) to U.S.S.G. § 4A1.1 are indistinct and serve identical purposes, Tisdale claims that he should not have received two additional criminal history points under subsection (d). As a result of his two objections, Tisdale argues that he should only be assessed a total of nine criminal history points, placing him in a criminal history category IV rather than a category VI as found by the district court.

The Government argues that the district court did not commit plain error in calculating Tisdale's criminal history score and category. The Government asserts that, contrary to Tisdale's allegations, application note 11 to U.S.S.G. § 4A1.2 does not apply in this case because, when his sentences of probation were revoked by the state court, his original sentences were merely re-instated; he was not re-sentenced nor were any new sentences imposed. Accordingly, the Government claims that the revocations of Tisdale's unrelated three sentences of probation should count separately for purposes of calculating his criminal history score.

Furthermore, the Government argues that the addition of two points to Tisdale's criminal history score pursuant to U.S.S.G. § 4A1.1(d) does not constitute impermissible double counting because his federal offense conduct and his conduct which resulted in the

state court revoking his sentences of probation are not the same. Moreover, the Government asserts that the imposition of criminal history points under both subsection (a) and subsection (d) does not constitute impermissible double counting because those subsections involve two distinct considerations and serve different purposes. Accordingly, the Government contends that the district court did not commit plain error in calculating Tisdale's criminal history score or category.

As both parties recognize, because Tisdale did not object to the district court's calculation of his criminal history score, we review this issue for "plain error." Fed. R. Crim. Pro. 52(b); United States v. Malone, 222 F.3d 1286, 1296 (10th Cir. 2000). As this Court has previously explained:

> To establish plain error [Tisdale] must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights. If these three elements are satisfied, then we may exercise discretion to correct the error if it seriously affect [s] the fairness, integrity, or public reputation of judicial proceedings.

United States v. Whitney, 229 F.3d1296, 1308 (10th Cir. 2000)(internal citations and quotations omitted).

In the instant case, we cannot say that the district court committed plain error in calculating Tisdale's criminal history score or category. Tisdale's position does find some support in the example provided in application note 11 to U.S.S.G. § 4A1.2. The example provided by the Sentencing Commission in note 11 provides:

> A defendant was serving two probationary sentences, each counted separately under § 4A1.2(a)(2); probation was revoked on both sentences as

a result of the same violation conduct; and the defendant was sentenced to a total of 45 days of imprisonment. If one sentence had been a "straight" probationary sentence and the other had been a probationary sentence that had required service of 15 days of imprisonment, the revocation term of imprisonment (45 days) would be added to the probationary sentence that had the 15-day term of imprisonment. This would result in a total of 2 criminal history points under § 4A1.1(b) (for the combined 60-day term of imprisonment) and 1 criminal history point under § 4A1.1(c) (for the other probationary sentence).

U.S.S.G. § 4A1.2, cmt., n. 11.

Here, Tisdale was serving three separate sentences of probation imposed by a Kansas state court. Because of his federal drug conviction, the state court revoked his three sentences of probation and sentenced him to 72 months of imprisonment. Thus, the above example appears to substantiate Tisdale's claim that, while he should have received three criminal history points for one of his convictions for which his sentence of probation was revoked, he should only have received one criminal history point per conviction for his other two convictions for which he had his sentence of probation revoked, not two and three points respectively as imposed by the district court. Other circuit courts have agreed with Tisdale's interpretation of note 11. See United States v. Flores, 93 F.3d 587, 591-92 (9th Cir. 1996)(holding that, under note 11, a revocation of probation for multiple sentences would increase the criminal history score for only one conviction, and the other convictions would be assigned only one criminal history point per conviction); see also United States v. Streat, 22 F.3d 109, 111 (6th Cir. 1994)(holding that, when a sentence of imprisonment has been imposed as the result of a revocation of

three separate sentences of probation, additional criminal history points should be assessed to only one of the convictions for which the sentence of probation has been revoked, not to all three); see also United States v. Dixon, 230 F.3d 109, 110 (4th Cir. 2000)(holding that "[a]n initial sentence imposing probation and a sentence upon revocation of that probation are treated as one sentence under the Guidelines.").

Despite the similarities, however, between Tisdale's situation and the example contained within application note 11 to U.S.S.G. § 4A1.2, we cannot say that the district court committed plain error in assessing Tisdale three, two, and three criminal history points respectively for the three convictions for which Tisdale's sentences of probation were revoked by the state court. By its terms, the example contained within note 11 applies only "[w]here a revocation applies to multiple sentences . . . ." U.S.S.G. § 4A1.2, cmt., n. 11 (emphasis added). Here, it is unclear whether the state court intended that the revocation order revoking Tisdale's sentences of probation applied to all of his sentences or whether the state court treated the revocations and sentences as separate and independent matters.

Three points are worth noting in this regard. First, we believe that the state court's intentions and treatment of Tisdale's revocations and sentencing thereafter are factual matters, and factual disputes cannot constitute plain error. See United States v. Svacina, 137 F.3d 1179, 1187 (10th Cir. 1998)(citing cases and holding that "[t]his court has held repeatedly that factual disputes not brought to the attention of the court do not rise to the

level of plain error."). Second, the fact that the state court imposed separate sentences as to each count and as to each conviction lends support for the Government's position that the state court treated the revocations separately and did not intend to have one revocation apply to multiple sentences. The fact that the state court imposed the sentences to run concurrently does not detract from this position. See United States v. Jones, 87 F.3d 247, 248 (8th Cir. 1996)("agree[ing] with the district court that Jones's two unrelated convictions did not become related by virtue of the probation revocation and concurrent sentencing, and thus we conclude the district court properly assessed three points for each conviction."); see also United States v. Harris, 191 F.3d 457, 1999 WL 638514, * 1 (7th Cir. Aug. 18, 1999)(noting that "it matters not that his post-revocation sentence ran concurrent to the sentence for his second conviction - the two sentences are regarded as separate, even though they were imposed on the same day."). Third, this Court has previously held that just because a court conducts a single hearing in revoking multiple sentences of probation does not mean that the cases should be treated as related cases. United States v. Jones, 898 F.2d 1461, 1464 (10th Cir. 1990); United States v. Villarreal, 960 F.2d 117,119-20 (10th Cir. 1992).

Although considered in an unpublished opinion which is not binding,[12] this Court has previously reached such a result. In United States v. Flores-Martinez, 7 F.3d 1045, 1993 WL 408016 (10th Cir. Oct. 14, 1993), the defendant had two prior convictions for

_____

[12]See 10th Cir. R. 36.3.

which his sentences of probation were revoked as a result of his conviction in the case under consideration. Id. at * 1.  The district court assigned three criminal points for each conviction which had been revoked, treating the convictions as separate. Id.  In affirming the district court's criminal history score calculation, this Court distinguished the example contained in note 11:

> The facts in the case before us are somewhat different because the sentencing court imposed separate sentences upon revocation of defendant's probation for both conviction nos. 1 and 2.  The sentencing court treated the convictions as separate and unrelated but evidently handled these matters in a single resentencing hearing for reasons of judicial efficiency.  We have previously held that "requiring separate proceedings to revoke probation and resentence the defendant for each offense is not necessary to preserve the status of his prior convictions as 'unrelated cases.'" United States v. Jones, 898 F.2d 1461, 1464 (10th Cir.), cert. denied, 498 U.S. 838 (1990).))   We do not understand the guidelines to contemplate that the impact of multiple unrelated prior convictions be reduced because the district court conducts resentencing in a single hearing.  Here defendant's two probationary sentences were individually revoked and he was resentenced separately as to both.  In that circumstance each conviction should be counted to enhance defendant's criminal history category pursuant to 4A1.1(A).

Id. at * 2.  Based upon the record before us, it is unclear whether the state court considered Tisdale's revocations as separate or whether it intended for the single revocation of Tisdale's sentences of probation to apply to the multiple sentences which it imposed.  As such, we cannot say that the district court committed plain error in calculating Tisdale's criminal history score based upon the revocation of his sentences of probation.

Nor can we say that the district court committed plain error in assessing Tisdale

-36-

criminal history points under both U.S.S.G. § 4A1.1(a) and § 4A1.1(d). The assigning of points for prior convictions and for violating the terms of one's probation involve two distinct considerations and, therefore, does not result in impermissible double counting. See United States v. Martinez, 931 F.2d 851, 852 (11th Cir. 1991)(holding that "[t]he district court's assignment of points under both section 4A1.1(a) and section 4A1.1(d) does not punish Martinez more than once for the same offense, but rather only determines the severity of his single sentence."); see also United States v. Burnett, 952 F.2d 187, 189 (8th Cir. 1991)(rejecting the defendant's argument that the assignment of criminal history points under both § 4A1.1(a) and § 4A1.1(d) constitutes impermissible double-counting); see also United States v. Franklin, 148 F.3d 451, 461 (5th Cir. 1998)(same); see also United States v. Salyers, 160 F.3d 1152, 1163-64 (7th Cir. 1998)(affirming the district court's assignment of criminal history points pursuant to both U.S.S.G. § 4A1.1(c) and § 4A1.1(d)). Accordingly, the district court did not commit plain error in assigning criminal history points to Tisdale pursuant to both U.S.S.G. § 4A1.1(a) and § 4A1.1(d).

### III. CONCLUSION

For the reasons stated above, we AFFIRM Tisdale's conviction and the district court's calculation of Tisdale's criminal history score and category. However, Tisdale's sentence is VACATED, and this matter is REMANDED for re-sentencing in order for the district court to decide whether Tisdale's sentence in this case should run consecutive to, concurrent with, or partially concurrent with his State sentence.