**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONALD E. NORRIS,

Defendant - Appellant.

No. 02-3047

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 00-CR-20137-JWL)**

---

Charles D. Dedmon, First Assistant Federal Public Defender, Kansas City, Kansas, for Defendant - Appellant.

Nancy Landis Caplinger, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff - Appellee.

---

Before **KELLY**, Circuit Judge and **BRORBY**, Senior Circuit Judge and **OBERDORFER**,[*] District Judge.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

Defendant-Appellant Donald E. Norris pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922 (g)(1). In so doing, Mr. Norris reserved his right to appeal the district court's order denying his motion to dismiss his indictment for lack of a qualifying conviction. Following his guilty plea, the district court sentenced Mr. Norris to 41 months of imprisonment followed by a three-year term of supervised release. On appeal, Mr. Norris claims that the district court erred in denying his motion to dismiss. Additionally, Mr. Norris contends that the district court erred in calculating his criminal history category and that it mistakenly applied a four-level enhancement to his base offense level for possessing a firearm in connection with another felony. See U.S.S.G. §2K2.1(b)(5). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

In August of 2000, Kansas City, Kansas police officers ("the officers") responded to a report of shots fired near Mr. Norris' residence. Upon arriving at the scene, a neighbor informed the officers that he observed Mr. Norris fire a handgun several times before leaving in his automobile. While the officers were still at the scene, Mr. Norris returned to his residence and was promptly taken into custody for outstanding warrants. In a statement to the officers, a passenger in

Mr. Norris' vehicle reported that Mr. Norris had fired the gun at an unknown individual who ran behind his residence. Further investigation resulted in the recovery of several shell casing from the ground and a semi-automatic handgun from under the passenger seat of Mr. Norris' vehicle.

Mr. Norris thereafter was charged in federal court with violating 18 U.S.C. § 922 (g)(1), which prohibits the possession of a firearm by a person who has been convicted of a crime punishable by a term of imprisonment exceeding one year. The indictment was predicated upon two prior state-court theft convictions– one in February of 1999, and the other in September of 1999–which were, according to the indictment, punishable by more than one year of imprisonment under Kansas law then in effect. I R. Doc. 1 at 1. Mr. Norris filed a motion to dismiss the indictment on the ground that the two convictions were not for crimes punishable by more than one year. Specifically, Mr. Norris argued that because the maximum presumptive sentences for his February and September convictions were seven and nine months respectively, and because the Kansas Supreme Court in State v. Gould, 23 P.3d 801 (Kan. 2001), held unconstitutional the portion of the Kansas Sentencing Guidelines Act authorizing upward departures, his prior convictions were not qualifying convictions under § 922 (g)(1). I R. Doc. 13 at 4-5. The district court denied the motion to dismiss, holding that the court in Gould expressly held that its opinion would not be retroactive beyond June 26, 2000, and

that, accordingly, Mr. Norris' two convictions "clearly were punishable by imprisonment for a term exceeding one year under state law." II R. at 12.

After reserving his right to appeal the district court's ruling, Mr. Norris pleaded guilty and proceeded to sentencing. At sentencing, Mr. Norris objected to the application of a four-level enhancement for possession of a firearm in connection with another felony offense and the calculation of his criminal history category. Regarding the four-level enhancement, Mr. Norris argued that contrary to the statement of the passenger in his vehicle, he did not fire the gun *at* anyone and that he therefore did not possess or use the firearm in connection with another felony under U.S.S.G. §2K2.1(b)(5). Mr. Norris also argued that the witness' statement did not provide a sufficient factual basis to justify application of the enhancement.

Regarding the calculation of his criminal history category, Mr. Norris argued that the pre-sentence report ("PSR") improperly assessed two criminal history points each for two of his prior convictions that resulted in probation. Noting that both sentences of probation were revoked on the same day, Mr. Norris argued that under Application Note 11 to U.S.S.G. §4A1.2, which governs the criminal history calculation where a revocation of probation applies to multiple sentences, he should have been assessed a total of three rather than four criminal

history points.[1]

The district court first overruled Mr. Norris' objection to the four-level enhancement, holding that the witness' statement was sufficient to support application of the enhancement. As to his criminal history calculation objection, the district court began by acknowledging that the question was not "open and shut in terms of how to read this particular guideline section." IV R. at 21. Nevertheless, the district court overruled the objection, holding that because the state court imposed more than one sentence upon revocation, Application Note 11 was therefore inapplicable. IV R. at 23-24.

## Discussion

1. The Motion to Dismiss

On appeal, Mr. Norris first argues that the district court erroneously denied the motion to dismiss his indictment for lack of a qualifying conviction under 18 U.S.C. § 922 (g)(1). Whether a prior conviction was for a "crime punishable by imprisonment for a term exceeding one year" is a question of law we review de novo. See United States v. Hall, 20 F.3d 1066, 1068 (10th Cir. 1994).

As noted above, § 922 (g)(1) prohibits any person who has been convicted

_____

[1] In Mr. Norris' case, the subtraction of just one criminal history point would have resulted in a criminal history category reduction from category V to category IV.

of a crime punishable by a term of imprisonment exceeding one year to, *inter alia*, "possess in or affecting commerce, any firearm . . . ." Section 921(a)(20) of Title 18 further provides that "what constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." Mr. Norris was convicted of felony theft in state court in February of 1999 and again in September of 1999. He correctly points out that under Kansas' sentencing guidelines for non-drug offenses, K.S.A. § 21-4704, the presumptive maximum sentences for these two offenses were seven and nine months respectively. However, at the time of these convictions, Kansas law permitted upward departures by the trial court up to "double the maximum duration of the presumptive imprisonment term." K.S.A. § 21-4719 (b)(2). Accordingly, even though the state-court judge did not depart from the guidelines in sentencing Mr. Norris, both of his convictions were nonetheless "punishable" by terms exceeding one year due to the possibility of a departure.

Our recent opinion in United States v. Arnold, 113 F.3d 1146 (10th Cir. 1997) reinforces this conclusion. In Arnold we held that because Kansas' then-applicable sentencing scheme permitted upward departures from the maximum presumptive sentence based on aggravating factors, where a departure sentence *could* exceed one year, the underlying offense qualifies as a crime "punishable by imprisonment for a term exceeding one year" under § 922 (g)(1). 113 F.3d at

1148. We reached this conclusion in <u>Arnold</u> even though (1) the defendant's maximum presumptive sentence in that case, as in the instant case, was less than one year under Kansas law, and (2) the state court did not depart from the presumptive sentence in sentencing the defendant. <u>Id.</u> In so holding, we noted that "[w]hat matters is not the actual sentence which the appellant received, but the maximum possible sentence." <u>Id.</u> We also rejected any contention that because no aggravating factors existed in the defendant's case, the presumptive maximum sentence was in fact the "maximum possible sentence." <u>Id.</u> In so doing, we held that because "[c]onsideration of aggravating factors is discretionary with the trial judge, and the list of factors [in the statute] is expressly nonexclusive . . . until actual imposition of sentence, appellant could not predict whether his sentence would exceed one year." <u>Id.</u> at n.1.

Mr. Norris attempts to distinguish <u>Arnold</u> by pointing out that in 2001, the Kansas Supreme Court in <u>State v. Gould</u> held Kansas' departure sentencing scheme unconstitutional. Mr. Norris argues that because under <u>Gould</u>, the crimes for which he was convicted were no longer subject to departure sentences, and the maximum presumptive sentences for both crimes were less than one year, he "had not been convicted of a crime punishable by imprisonment for a term exceeding one year on the date when he possessed the firearm at issue." Aplt. Br. at 13. We disagree.

In Gould, the Kansas Supreme Court held that under Apprendi v. New Jersey, 530 U.S. 466 (2000), Kansas' scheme for imposing upward departure sentences violated the due process and jury trial rights contained in the Sixth and Fourteenth Amendments. Gould, 23 P.3d 801 at 814. However, the court also held that its opinion had "no retroactive application to cases final as of June 26, 2000, the date Apprendi was decided." Id. As noted above, both of Mr. Norris' prior convictions were final by September of 1999. Consequently, Gould does not foreclose a conclusion that the two 1999 theft offenses were punishable by terms of imprisonment exceeding one year under Kansas law at the time of his convictions. See Arnold, 113 F.3d at 1148.

Recognizing the above difficulty, Mr. Norris argues that "[t]he issue is not whether the Gould decision applied to Mr. Norris' state case[s], but instead whether the definition of a term (maximum sentence) could be ignored by the federal courts in lieu of an incorrect earlier interpretation of state law . . . ." Aplt. Br. at 15. In essence, Mr. Norris argues that the court in Gould simply "clarified" Kansas law and "interpreted the state sentencing guideline scheme and defined the maximum sentence imposeable upon a defendant's conviction," Aplt. Br. at 11, and that the effect of the decision was merely to correct the incorrect interpretation of Kansas' Sentencing Guidelines Act which permitted state trial judges to depart upward from presumptive sentences. Id. at 12. Consequently,

- 8 -

Mr. Norris argues, the decision in Gould re-interpreted the term "maximum sentence" to make clear that it referred only to "the punishment to which the defendant is exposed under the facts as pled." Id. Because a qualifying conviction under § 922 (g)(1) depends on state law, he continues, federal courts after Gould may look only to the maximum presumptive sentence authorized by the sentencing guidelines in determining whether a conviction qualifies under § 922 (g)(1), regardless of when the defendant's state convictions became final. Aplt. Br. at 14-17, II R. 7-8.

The problem, of course, with Mr. Norris' argument, is that the Kansas Supreme Court in Gould did not simply interpret the relevant statutory provisions so as to make clear that departure sentences were not within the power of state trial judges. On the contrary, the court held that the statute at issue, which expressly permitted upward departures, was "unconstitutional on its face,"and that the defendant's sentence therefore could not stand. Gould, 23 P.3d at 814; see also State v. Garcia, 56 P.3d 797, 798 (Kan. 2002) (stating that court in Gould held that Kansas' departure sentencing scheme was unconstitutional because it "allow[ed] the district court to impose a sentence beyond the statutory maximum based upon a court finding of certain aggravating factors . . . ."). Consequently, we are not presented with a situation where a state supreme court has merely clarified a statute by defining a key term therein. We therefore need not apply the

decision in Gould to all § 922 (g)(1) cases arising after that opinion on the ground that "the state decision in Gould is a definition of a term which the federal courts must follow." Aplt. Br. at 17-18.

In the instant case, it makes no difference that had Mr. Norris' state convictions occurred after June 26, 2000, the underlying offenses would not have been punishable by more than one year under the decision in Gould. Likewise, it is of no consequence that at the time of his federal offense, departure sentences were no longer permitted under Kansas law. What does matter is that under the law of the jurisdiction where the proceedings were held, at the time of those proceedings, Mr. Norris had committed an offense punishable by more than one year. Had Mr. Norris' state convictions become final after June 26, 2000, we would have before us a very different case. However, because Mr. Norris' state convictions were final before the cut-off date designated in Gould, the decision in that case has no effect on either the validity of his convictions or their proper classification for purposes of § 922(g)(1). We therefore hold that the district court properly denied Mr. Norris' motion to dismiss.

2. The Four-Level Enhancement

Mr. Norris next argues that the district court erred in applying a four-level enhancement to his base offense level on the ground that his possession of a firearm was in connection with another felony offense. Paragraph 11 of the PSR

reported that a witness informed an investigating officer that she observed Mr. Norris fire "five shots at an unknown subject he had seen running behind his residence," and that such conduct was "consistent with a violation of K.S.A. 21-3410; Aggravated Assault a level 7 Person Felony offense." V R. at 5. On appeal, Mr. Norris argues that (1) the witness' statement was untrue and unreliable, and thus, "not a reliable basis" upon which to impose the enhancement, Aplt. Br. at 28, and (2) the enhancement was improper because in any case, the witness' statement did not establish each of the necessary elements of an aggravated assault under Kansas law.

In reviewing sentence enhancements under the Guidelines, "we review factual findings of the district court under the clearly erroneous standard . . . and review de novo questions of law." United States v. Gomez-Arrellano, 5 F.3d 464, 465 (10th Cir. 1993) (citations omitted). Moreover, in reviewing sentences on appeal, we must "give due regard to the opportunity of the district court to judge the credibility of the witnesses . . . and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742 (e).

A four-level enhancement is required under U.S.S.G. §2K2.1(b)(5) if "the defendant used or possessed any firearm or ammunition in connection with another felony offense." The term "felony offense" refers to "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one

year, whether or not a criminal charge was brought, or conviction obtained."

U.S.S.G. § 2K2.1(b)(5) cmt. n.7. To justify application of the enhancement, the

government must prove by a preponderance of the evidence that the defendant

used the firearm in connection with another felony. United States v. Pantelakis,

58 F.3d 567, 568 (10th Cir. 1995).

Mr. Norris relies on our opinion in United States v. Fennell, 65 F.3d 812

(10th Cir. 1995) as support for his position that the witness' statement was

insufficient to meet the government's burden of proof. In Fennell, we held that

where a defendant properly objects to a statement in a PSR, "[u]nsworn out-of-

court statements made by an unobserved witness and unsupported by other

evidence form an insufficient predicate for a sentence enhancement under

2K2.1(b)(5)." Id. at 814. Fennell, however, is easily distinguished from the case

at bar. In Fennell, the only evidence presented supporting the enhancement was

(1) a hearsay statement contained in the PSR made by the defendant's girlfriend

during a telephone interview with the officer who prepared the PSR to the effect

that the defendant had fired a machine gun at her, and (2) the testimony of that

officer at the sentencing hearing that merely recounted the girlfriend's statement

made during the interview. Id. at 813. In holding that the enhancement was

improper, we emphasized that other than the statement in the PSR and the

officer's hearsay testimony, there was no other evidence suggesting that the

defendant fired the gun *at* anyone.  Id.

In the instant case, however, when the district court at Mr. Norris'

sentencing hearing inquired of the government how it wished to proceed, the

government responded by placing in evidence as an admission paragraph 3 of Mr.

Norris' plea agreement.[2]  Rather than adducing evidence on his client's behalf

when provided the opportunity to rebut the government's evidence, counsel for

Mr. Norris stated–after conceding that the witness made the statement at issue and

that Mr. Norris fired the gun–that "our position is that [the witness' statement]

wasn't correct; that Mr. Norris had fired a gun but did not fire it at anyone . . . ."

---

[2]  The relevant portion of Paragraph 3 of Mr. Norris' plea agreement reads as follows:

The parties agree to the following factual basis for the defendant's plea of guilty:

On August 27, 2000, officers of the Kansas City, Kansas, Police Department went to [Mr. Norris' residence] in response to a report of shots being fired.  When the officers arrived, a man said his neighbor, Donald E. Norris, had fired a handgun several times and then driven away in his car.  While the police were still there, Norris returned and the officers took him into custody because of outstanding warrants.  A woman who was a passenger in his car said Norris had fired at an individual who ran behind his residence.  The gun was under the passenger's seat in the car, and shell casings were recovered from the ground.  The firearm was a Hi-Point .380 ACP semi-automatic pistol . . . which had been shipped and transported in interstate commerce.

I R. Doc. 20 (Plea Agreement at 2).

- 13 -

IV R. at 6-7. Significantly, counsel for Mr. Norris thereafter declined to present any evidence supporting his position when the district court, noting the lack of evidence, provided him with an opportunity to do so. IV R. at 7.[3]

Additionally, we note that the district court here, unlike the court in Fennell, specifically commented on the reliability of the witness' unrebutted statement. In holding that the statement was sufficient to justify application of the enhancement, the district court stated that it had "no reason not to believe [the statement], and there's no evidence to the contrary; it appears that it was gathered

---

[3] The following colloquy between the district court and counsel for Mr. Norris took place at the sentencing hearing when the district court inquired whether Mr. Norris intended to present any evidence supporting his argument that he did not fire his gun *at* anyone:

> THE COURT: . . . What you're telling me, Mr. Dedmon, is that you have no evidence that the defendant wishes to put on on this particular subject; is that correct?
>
> MR. DEDMON: Putting on evidence myself?
>
> THE COURT: I'm offering you the opportunity, if you want to, to put on evidence. You don't have to, obviously.
>
> MR. DEDMON: May I confer with my client? We have conferred about this before but I want to confer one more time.
>
> Your honor, we don't have any evidence to put on.

IV R. at 8.

under circumstances that would tend to show its reliability . . . so the objection is overruled." IV R. at 8. In light of the district court's assessment of the statement's reliability, as well as the complete absence of any evidence rebutting the witness' account and the government's evidence, we hold that the evidence was sufficient to warrant application of the enhancement under §2K2.1(b)(5).

For the first time on appeal Mr. Norris also contends that even if the court were to accept the witness' statement as true, the four-level enhancement would nonetheless be improper because it was "not proven that the witness' statement, if believed, established the elements of Aggravated Assault." Aplt. Br. at 32.

In his objections to the PSR and during argument at his sentencing hearing, Mr. Norris argued only that he did not actually fire a gun at anyone and that the witness' statement was incorrect and unreliable. V R. at 14; IV R. at 6-8. We have consistently held that absent "extraordinary circumstances," we do not consider arguments raised for the first time on appeal. McDonald v. Kinder-Morgan Inc., 287 F.3d 982, 999 (10th Cir. 2002). Moreover, we are convinced that the imposition of the four-level enhancement did not constitute plain error because Mr. Norris did not show a "clear or obvious error that affected his substantial rights and seriously affected the integrity of the judicial proceedings." United States v. Battle, 289 F.3d 661, 669 (10th Cir. 2002) (citations omitted). We therefore decline to address this argument.

3. Criminal History Calculation

Mr. Norris' final argument is that the district court erred in calculating his criminal history category. The PSR assessed Mr. Norris a total of 10 criminal history points, resulting in his assignment into criminal history category V. In so doing, the PSR assessed Mr. Norris two points each for the two prior theft convictions which occurred in February and September of 1999. For his February conviction Mr. Norris received a six-month suspended sentence and 24 months of probation. For his September conviction he received an eight-month suspended sentence and 24 months of probation. The PSR reflects that on December 4, 2000, both sentences of probation were revoked and Mr. Norris was sentenced to six months for the February conviction and eight months for the September conviction.

Section 4A1.2(k)(1) of the Guidelines provides that "[i]n the case of a prior revocation of probation . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for §4A1.1(a), (b), or (c), as applicable." Applying this section, the PSR added the term or imprisonment imposed upon revocation in each case (six and eight months respectively) to the original term of imprisonment, which, because the original sentences consisted of probation only, yielded an adjusted term of imprisonment of six and eight months. Because each

sentence was more than 60 days but less than 13 months, the PSR assessed two points for each conviction under §4A1.1(b). The district court adopted the calculation over Mr. Norris' objections and sentenced him accordingly.

Mr. Norris asserts that Application Note 11 to §4A1.2(k) ("Note 11") applies to these convictions and that he therefore should have been assessed a total of three rather than four criminal history points for the two convictions. Note 11 provides that:

> Section 4A1.2(k) covers revocations of probation . . . where the original term or imprisonment imposed, if any, did not exceed one year and one month. Rather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total should be counted as if it were one sentence . . . .
>
> Where a revocation applies to multiple sentences, and such sentences are counted separately under §4A1.2(a)(2), add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points.

To demonstrate the proper application of Note 11, the Guidelines give the following example:

> A defendant was serving two probationary sentences, each counted separately under §4A1.2(a)(2); probation was revoked on both sentences as a result of the same violation conduct; and the defendant was sentenced to a total of 45 days of imprisonment. If one sentence had been a "straight" probationary sentence and the other had been a probationary sentence that had required service of 15 days of imprisonment, the revocation term of imprisonment (45 days) would be added to the probationary sentence that had the 15-day term of imprisonment. This would result in a total of 2 criminal history

points under §4A1.1(b) (for the combined 60-day term of imprisonment) and 1 criminal history point under §4A1.1(c) (for the other probationary sentence).

U.S.S.G. §4A1.2, cmt. n. 11. Applying Note 11 and the example supplied therein, Mr. Norris contends that the court should have assessed two points for his February conviction, but only one point for his September conviction. In overruling his objection, the district court held that the PSR calculation was correct because the state court did not impose one term of imprisonment as a result of the revocation of probation. We agree.

An examination of Note 11 reveals three requirements that must be met before the rule illustrated in the example will apply. First, there must be a single revocation of probation that applies to multiple sentences. See U.S.S.G. §4A1.2, cmt. n.11 (stating that "where *a revocation* applies to multiple sentences," the sentencing court is to "add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points.") (emphasis added). Second, the multiple sentences to which the revocation applies must have been counted separately under §4A1.2(a)(2), i.e., they must have been imposed in "unrelated cases." U.S.S.G. §4A1.2 cmt. n.3. Third, the revoking court must have imposed only one term of imprisonment upon revocation of the probationary sentences. See U.S.S.G. §4A1.2 cmt. n.11 (instructing the sentencing court to add "*the term* of imprisonment imposed upon

revocation" to the sentence that will result in the greatest increase in criminal history points.) (emphasis added).

Inasmuch as Mr. Norris' sentences of probation were imposed for offenses that were "separated by an intervening arrest," U.S.S.G. §4A1.2, cmt. n.3, the sentences were clearly imposed in "unrelated cases," and the second element discussed above is therefore satisfied. It is not so clear, however, whether the first prerequisite is met. Although the record reveals that both sentences of probation were revoked on the same day, it does not indicate whether the state court revoked both sentences via a single revocation, or instead intended to revoke each sentence separately. This court has previously stated, albeit in dicta, that where the state court's intent regarding this aspect of a revocation of probation is unclear, the fact that the state court imposed separate sentences for each conviction in not without significance. United States v. Tisdale, 248 F.3d 964, 982 (10th Cir. 2001).

In Tisdale, as here, the defendant claimed that the district court erroneously calculated his criminal history score by failing to take into account the effect of Note 11. Id. at 980. In that case, however, because the defendant failed to object to his criminal history calculation at sentencing, the court reviewed his claims for plain error. Id. at 981. Noting that "the example contained within note 11 applies only '[w]here a revocation applies to multiple

sentences,'" and that it was unclear whether "the state court intended that the revocation order . . . appl[y] to all his sentences or whether the state court treated the revocation and sentence as separate and independent matters," id. at 982 (citations omitted), the court held that the district court did not commit plain error in calculating his criminal history category. Id. at 983. In so doing, the court found it significant that the state court imposed separate sentences upon revoking his probation, noting that "the fact that the state court imposed separate sentences as to each count and as to each conviction lends support for the Government's position that the state court treated the revocations separately and did not intend to have one revocation apply to multiple sentences." Id. at 982.

Although Tisdale does not control here because it involved a plain error review, we agree that where a state-court judge imposes separate sentences upon the revocation of unrelated sentences of probation, the conclusion to be drawn is that the state court did not intend to have one revocation apply to multiple sentences. Nevertheless, even if the state court intended a single revocation to apply to Mr. Norris' multiple sentences, Note 11 still does not apply. The third condition that must be satisfied is that the state court must have imposed one sentence upon revocation. Here, the state court imposed two sentences upon revoking Mr. Norris' probation: six months for the February conviction, and eight months for the September conviction. V R. at 7-8.

- 20 -

In arguing that Note 11 nonetheless applies, Mr. Norris claims that if the foregoing interpretation is correct, the example will never apply where multiple sentences of probation are revoked in Kansas state court because under Kansas law, the revoking judge is required to impose separate sentences. While this may be true, it does not change the fact that the plain language of Note 11 clearly limits the applicability of the example to situations where only one sentence is imposed upon revocation.

In a further attempt to support his position, Mr. Norris cites United States v. Streat, 22 F.3d 109 (6th Cir. 1994). In that case, the defendant received three separate suspended sentences of one year of imprisonment followed by two years of probation for three separate drug offenses, with each sentence to be served concurrently. Id. at 110. When the defendant later violated his probation, the trial court sentenced him to three separate one year terms of imprisonment for each of his prior convictions, again with each sentence to be served concurrently. Id. In determining how the revocation of his sentences of probation should be counted in calculating his criminal history category, the Sixth Circuit held that:

> The example in application note 11 is precisely on point: [Defendant] was serving multiple probationary sentences at the time that his probation was revoked; probation was revoked on these sentence for the same "violation conduct"; and he was sentenced to *a total* of one year in prison.

Id. at 111. (emphasis added).

Although <u>Streat</u> appears to support Mr. Norris' position, we do not find that case persuasive. While it is true that the separate terms of imprisonment imposed in <u>Streat</u> were to run concurrently, the fact remains that the trial court imposed three separate one-year sentences, not a single sentence of one year. Neither the text of §4A1.2 nor the example provided in Note 11 suggests that sentencing courts should disregard additional concurrent sentences or aggregate a defendant's consecutive sentences in order to make a trial court's revocation of probation "fit" the example in Note 11. We believe that the approach we adopt here is more consistent with the text of the relevant provisions than the Sixth Circuit's approach in <u>Streat</u>. We therefore hold that where a state court has imposed multiple sentences upon a revocation of probation, regardless of whether they are to be served consecutively or concurrently, Note 11 does not apply and the sentencing court must calculate the defendant's criminal history category in accordance with §4A1.2(k).

AFFIRMED.